**IN THE COURT OF APPEALS OF IOWA**

No. 24-0504
Filed July 3, 2024

**IN THE INTEREST OF B.U. and A.U.,**
**Minor Children,**

**A.U., Mother,**
    Appellant,

**B.U., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

Parents separately appeal the termination of parental rights to two children.

**AFFIRMED ON BOTH APPEALS.**

Patricia Rolfstad, Davenport, for appellant mother.

Paige E. Hillyer, Davenport, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

G. Brian Weiler, Davenport, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The mother and father separately appeal termination of their parental rights to a male child, B.U. (born 2015), and a female child, A.U. (born 2016). After considering the arguments put forward by the parents on appeal, we affirm the termination of both parents' rights.

**Background Facts and Proceedings.[1]**

This family came to the attention of the Iowa Department of Health and Human Service (HHS) in early 2022 on reports of physical abuse inflicted on the children and substance abuse inside the home. These claims mirrored reports from another state, where the family lived before 2020. The juvenile court ordered an emergency removal after B.U. went to school with visible injuries and reported his dad had "smacked" and "bit" him; a medical examination confirmed the report and concluded the injuries were inflicted by another person. The court found the father had hit, struck, and bit the male child, and the mother had either participated in the physical abuse or at minimum lied to cover it up.

At removal, both children were malnourished and severely underweight, and they reported the parents withheld food from them. B.U. had a 0% body mass index when removed, meaning he was in the bottom percentile for weight for his age, and A.U. was in the second percentile. Both children also suffered a variety of health issues reflecting significant deficits in dental and medical care.

---

[1] Given the limited scope of claims properly presented, we focus our discussion of the facts on the physical and sexual abuse perpetrated against these children by the parents. But we note the case files contain additional information supporting other concerns, including the parents' history of abusing controlled substances, their minimally treated mental-health diagnoses, and domestic violence.

A therapist diagnosed the children with trauma-related mental-health conditions. They were initially hesitant to discuss the past abuse with the therapist or others. While the children were still required to attend visits with the parents, A.U. would not share any negative information about the parents. But after visits were suspended, she eventually shared that she was sexually abused by both parents and observed her parents sexually abusing her brother. After disclosing the abuse, she told her therapist and others she did not want to see her parents. The therapist supported the child's wish and opined that contact with the parents was not in the child's therapeutic interest. In short, the therapist concluded "when we have a child who has trauma and the parent is causing the trauma, it's like re-traumatizing [the child] every time they have a visit."

The therapist treated B.U. until he was placed in a psychiatric medical institute for children (PMIC) following worsening behavioral problems. B.U. also disclosed physical and sexual abuse perpetrated against him by the father. B.U. also said he told his father to stop sexually abusing him "and he wouldn't." Instead, B.U. reported he sometimes was given toys after his father touched him under his pants. Like his sister, B.U. reported he did not want to see the parents, and the therapist supported that wish for therapeutic reasons.

Based on the therapist and guardian ad litem (GAL)'s recommendations, as well as HHS's concerns, visits between the parents and children were suspended and had not resumed as of trial. The court order suspending visits made specific fact-findings that continuing visits would harm the children emotionally and cause any progress they had made in processing their trauma to regress.

Over the life of the case, the mother engaged in some mental-health services, but the father did not. The mother briefly acknowledged then recanted that physical abuse occurred in the home; but she refused to recognize the children were sexually abused or malnourished. As of trial, the parents lived in a "very small, very cluttered" one-bedroom apartment that was not suitable to care for a single child or both children.

Both children had ups and downs while in foster care. As of trial, A.U. was in a pre-adoptive foster home where she participated in various extracurricular activities. As the children's GAL put it, A.U. "seem[ed] to have unbounded enthusiasm toward[ ] life in her foster home." B.U. remained at PMIC, where he was working on problems with aggression but was bonded and had a good relationship with staff members. In the GAL's words, he "is trying so hard to be good, to understand why he has his outbursts, and to practice the coping methods he is being taught." An HHS worker testified neither child asked about their parents and that both should be "allowed to put this chapter of their lives behind them and move forward." As far as their physical health, both children's weight significantly improved once out of the parents' care.

The county attorney, HHS, and the children's GAL[2] all recommended termination of both parents' rights. In its ruling, the juvenile court rejected the parents' assertions that the children had been coached or that their statements about sexual abuse were contaminated by HHS or the therapist. The court terminated both parents' rights under Iowa Code section 232.116(1)(d), (f), and (i)

---

[2] We appreciate the GAL's detailed written reports, which add important context to our review and ensure the children's voices are heard in these proceedings.

(2023). The parents separately appeal, and we review their claims de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** The mother challenges the evidence supporting termination under section 232.116(1)(d), (f), and (i). The State contests whether this error is properly before us due to error-preservation or waiver concerns. In our review, we note the mother's closing argument conceded "there are several grounds for termination that the State has proven given the lack of contact she has had with the children." Her argument only asked the juvenile court to consider other permanency options under section 232.104(2)(d) or grant her more time. We find any challenge to the statutory elements waived by the mother's concession that "several grounds for termination had been proven." *See In re E.W.*, No. 22-0604, 2022 WL 2824733, at *1 (Iowa Ct. App. July 20, 2022) ("Although it may be framed as a failure to preserve error, the failure to contest termination may also be properly deemed waiver of the challenge."); *In re M.L.H.*, No. 16-1216, 2016 WL 4803999, at *1 (Iowa Ct. App. Sept. 14, 2016) ("Although our prior cases have framed the issue as one of error preservation, it may be more accurate to deem the father's failure to contest termination in the juvenile court as waiver.").

But even if the claim was properly before us, we would affirm. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, the record evidence abundantly supports termination under section 232.116(1)(i) based on the reported neglect, physical abuse, and sexual abuse and the parents' abject failure to address the issues in any meaningful way. The mother does not dispute that the

children were adjudicated in need of assistance based on neglect, physical abuse, and sexual abuse due to her acts or omissions, or that the abuse constituted imminent danger. *See* Iowa Code § 232.116(1)(i)(1)–(2). We are not at all persuaded by the mother's contention the State did not prove services could not correct the conditions leading to the abuse or neglect, given the mother's failure to acknowledge the abuse or take any relevant action to protect the children and her continued relationship with an abusive partner. *See id.* § 232.116(1)(i)(3). To the contrary, we think this passage from the GAL's report sums things up well:

> The parents have a concerning history with child services in at least one other state that goes back to when the children were toddlers. They have had ample opportunity to look in the mirror and recognize their parenting issues to some meaningful degree. Instead, they have denied, minimized, explained, stonewalled, and argued with every concern. With the sole exception of a two-day awakening by the mother . . . , when she briefly started admitting to real problems and talked about changing the situation before backtracking, the parents have done nothing of consequence to remedy the concerns and start the work of getting their children back. There is a zero-percent chance that the children can be safely returned to the parents. Termination of parental rights is necessary to protect these children from further harm.

As the supreme court has observed, "It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists." *In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021). This mother has no protective capacity to guard against abuse she refuses to acknowledge, and there is no reason to think services can correct this deficit.

**Best Interests.** The mother also challenges whether termination is in the best interests of the children. On review, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of

the child[ren]." Iowa Code § 232.116(2). We agree with the juvenile court that termination is in the best interests of the children in light of the mother's refusal to acknowledge the physical- or sexual-abuse concerns that arose over the life of the case. She offers no safety, nurturing, or prioritization of the children's physical, mental, or emotional needs. Removal and the efforts of the current placements "ha[ve] actually improved the children's mental health and stability." The stability and safety afforded by the children's current and future placements far outweighs any benefit from continuing the parent–child relationship.

**Permissive Exception.** The father urges that his bond with the children supports a permissive exception to thwart termination. But the father never urged this exception below and the juvenile court never ruled on it, rendering his challenge unpreserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). But we note that, even if error had been preserved, there is no evidence of a positive bond between the father and either child, and certainly not a bond that would convince us by clear and convincing evidence we should invoke that permissive exception on this record. *See* Iowa Code § 232.116(3)(c); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests).

To the extent the mother's petition veers into claims about the separation of siblings, we note sibling bonds are not an enumerated exception to termination and are separately protected by statute. Iowa Code §§ 232.116(3) (exceptions to termination), .108(6) (providing for facilitation of sibling contact following termination of parental rights).

**Reasonable Efforts.** The mother makes scattered complaints in her petition on appeal about HHS's efforts toward reunification, with a focus on in-person visits with the children. It is unclear, but the father perhaps makes some version of the same challenge. Assuming without deciding the briefing was enough to invoke appellate review, we discern no basis for relief. "[T]he nature and extent of visitation is always controlled by the best interests of the child[ren]." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). We have explained that, "if services aimed to remove the risk responsible for limited visitation have not met their objective, then increased visitation would not be in the children's best interests." *In re J.C.*, No. 23-0729, 2023 WL 5605337, at *2 (Iowa Ct. App. Aug. 30, 2023). That was the case here, where the parents took little or no action to remedy the adjudicatory harms that led to the children's removal and the suspension of in-person visits. We also credit reports from the children's GAL about the parents' inappropriate behavior during visits, including coaching the children to fear HHS or misbehave in their foster homes, which similarly weighed against resuming visitation. Significant evidence in the record shows that, even while HHS worked diligently to facilitate visits, the mother turned them down due to her own schedule despite HHS efforts to accommodate her. For example, the mother claimed she had only three days available to see the children one month, and zero days another. There is no reason to think additional efforts in this area by HHS would have affected the trajectory of this case.

**AFFIRMED ON BOTH APPEALS.**